# IN THE DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Ramiro Casillas, on Behalf of Himself and all Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 5:20-cv-741 |
| Amerifield, Inc., | § § | COLLECTIVE ACTION |
| Defendant. | § § | DEMAND FOR JURY TRIAL |

## ORIGINAL COMPLAINT

Plaintiff Ramiro Casillas ("Plaintiff" or "Casillas"), on behalf of himself and all others similarly situated, files this Original Complaint against Defendant Amerifield, Inc. showing in support as follows:

### I. INTRODUCTION AND NATURE OF ACTION

1. This is an action brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the Portal-to-Portal Act, 29 U.S.C. §§ 251-262 (collectively, the "FLSA") seeking damages for Defendant's failure to pay minimum wages to Plaintiff and similarly situated truck driver employees of Defendant as a collective action under 29 U.S.C. § 216(b). Defendant Amerifield, Inc. ("Defendant" or "Amerifield") is a trucking company that provides transportation and logistics services to customers in the Southwestern United States.

2. Although it misclassified its truck driver employees as independent contractors paid pursuant to IRS Tax Form 1099, as a matter of economic reality under the FLSA, Defendant employed Plaintiff and similarly situated truck drivers, at times relevant to this lawsuit, on a per load basis. Defendant failed to ensure that its truck driver workers were paid at least minimum wage for all hours of work completed in each workweek. As the result of this pay practice,

1

Defendant frequently failed to pay its employee truck drivers' applicable minimum wages for all hours that they worked.

3. Furthermore, Defendant violated the FLSA's anti-kickback provision, *see* 29 C.F.R. § 531.35, by requiring Plaintiff and similarly situated truck drivers to pay approximately $2,000 in "escrow" at the beginning of employment to cover insurance, and gasoline. This money was considered non-refundable by Defendant and forfeit if the employee left his employment with Defendant. Furthermore, Defendant deducted a "fuel surcharge" and a lease payment, further diluting the pay Plaintiff and similarly situated truck drivers received.

4. Now, therefore, Plaintiff files this lawsuit on behalf of himself and other similarly situated employee drivers who worked for Defendant Amerifield, Inc. The lawsuit seeks damages for the difference between the amount of pay Plaintiff and putative collective action members received and the applicable minimum wages they earned on a weekly basis during the period of their employment in addition to liquidated damages, legal fees, costs, post-judgment interest, and all other damages allowed by the FLSA.

## II. THE PARTIES

**A.      Plaintiff Ramiro Casillas**

5. Casillas is an individual residing in Bexar County. Although Defendant paid Casillas as a 1099 independent contractor, Casillas was at all times an employee of Defendant as a matter of economic reality under the FLSA. Plaintiff was a truck driver who transported fracking sand in a large container truck with an attached bunk cab. His work took him away from home for several consecutive days and required that he sleep in the cab of his truck while away from home working for Defendant. He has standing to bring this lawsuit.

6. Casillas began working for Defendant beginning on or about November of 2019.

7. Casillas worked for Defendant in and around Midland, Texas; Odessa, Texas; Kermit, Texas; and San Antonio, Texas.

8. Casillas's written consent to participate in this lawsuit is filed along with this Original Complaint as Exhibit 1.

**B.     Putative Collective Action Members**

9. The putative collective action members are all current or former trucking employees of Defendant who were misclassified as independent contractors and, at any time in their employment, paid on a per load basis by Defendant.

10. Plaintiff seeks to represent the putative collective action members seeking damages for claims of unpaid minimum wages and liquidated damages pursuant to the FLSA, and is similarly situated to the collective action members pursuant to 29 U.S.C. § 216(b).

**C.     Defendant Amerifield Inc.**

11. Defendant Amerifield, Inc. ("Defendant" or "Amerifield"), is a trucking company that provides transportation and logistics services to customers in the Southwestern United States. Defendant is a corporation incorporated in the state of Oklahoma. During all times relevant to this lawsuit, Defendant has done, and continues to do, business in the state of Texas.

12. Defendant's principal place of business is 601 S. Boulder Avenue, Suite 900; Tulsa Oklahoma 74119.

13. At all times relevant to this lawsuit, Defendant has been and is an "enterprise engaged in commerce" as defined by the FLSA.

14. At all times relevant to this lawsuit, Defendant employed and continues to employ two or more employees.

15. At all times relevant to this lawsuit, Defendant employed two or more employees

who engaged in commerce and/or who handled, sold or otherwise worked on goods or materials that have been moved in or produced for commerce by any person.

16. Defendant employed two or more employees who regularly engaged in commerce in their daily work, including, but not limited to: transportation of goods within the state of Texas, communications using phones and radio with other employees and representatives or employees of customers of Defendant to facilitate delivery of goods from one location to another.

17. Furthermore, Defendant employed two or more employees who regularly handled, sold or otherwise worked on goods and/or materials in their daily work that were moved in and/or produced for commerce. Examples of such goods and/or materials include communications devices, truck fuel, and other equipment, supplies, and materials that were used in connection with Defendant's principal business operations.

18. On information and belief, at all times relevant to this lawsuit, Defendant has had annual gross sales or business volume in excess of $500,000.

19. Defendant may be served with summons in Oklahoma through its registered agent Sam Daniel located at 1756 S. Utica Avenue; Tulsa, Oklahoma 74104.

### III. JURISDICTION AND VENUE

20. This Court has federal question jurisdiction over all claims pursuant to 28 U.S.C. § 1331 and the FLSA at 29 U.S.C. § 216(b).

21. The United States District Court for the Western District of Texas has personal jurisdiction over Defendant because Defendant does business in Texas and in this District, and because many of the acts complained of and giving rise to the claims alleged occurred in Texas and in this District.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a

substantial part of the events giving rise to all claims occurred in this District, and in this Division.

## IV. FACTUAL BACKGROUND

23. Plaintiff and similarly situated truck drivers were employed by Defendant in connection with its logistics enterprise.

24. Although Defendant classifies its truck drivers as independent contractors, as a matter of economic reality under the FLSA, they were employees.

25. Defendant retained significant control over all aspects of its truck drivers' employment and working conditions.

26. Defendant hired and retained the ability to discipline and/or fire its truck driver employees.

27. The work performed by Plaintiff and other similarly situated truck drivers is not/was not for a defined or stated period of time, but was indefinite in nature. During the course of their employment, Plaintiff and similarly situated truck drivers worked exclusively for Defendant.

28. The work demand from Defendant prevents/prevented Plaintiff and similarly situated truck drivers from meaningful opportunity for earned income from a source other than Defendant.

29. Defendant has/had complete authority to control the details of the employment relationship with Plaintiff and similarly situated truck drivers, including setting work schedules and compensation rates.

30. Plaintiff and similarly situated truck drivers have/had no opportunity for profit or loss depending on their managerial skill, as they simply took the load they were assigned via the Defendant's route.

31. Plaintiff and similarly situated truck drivers' work does/did not require any particular skill or managerial talent when compared with that of employee truck drivers.

32. Plaintiff and similarly situated truck drivers do/did not hold themselves out as independent contractors or otherwise in business for themselves, and do/did not market their services for other potential sources of income as independent contractors.

33. Plaintiff and similarly situated truck drivers' investment in equipment, if any, is/was minimal compared to that of the Defendant. Defendant provided trucks that it instructed Plaintiff and similarly situated truck drivers to "rent" in an effort to decrease its bottom line in violation of the FLSA. Apart from the large truck, no other tools were necessary to perform the job duties Plaintiff and similarly situated truck drivers performed.

34. On the other hand, Defendants incurred hundreds of thousands of dollars in investments and expenses in connection with running their business operations, including employee salaries, worksites, and marketing expenses.

35. The work performed by Plaintiff and similarly situated truck drivers is/was integral to Defendant's business, because without truck drivers such as Plaintiff, Defendants would have no profit centers.

36. In the course of their employment with Defendant, Plaintiff and similarly situated truck drivers were routinely on duty for over twenty-four hours straight. Many worked away from home for consecutive days or weeks.

37. In connection with their truck driving work, Plaintiff and similarly situated truck drivers were required to perform duties and remain at all times with or near the truck, to help protect the Defendant's trucks and the contents of the towed shipping containers/trailers.

38. Plaintiff and similarly situated truck drivers were at all relevant times paid on a per-

load basis.

39. However, Defendant also required Plaintiff and similarly situated truck drivers to pay approximately $2,000 in "escrow" at the beginning of employment to cover insurance, and gasoline. This money was considered non-refundable by Defendant and forfeit if the employee left his employment with Defendant. Furthermore, Defendant deducted a "fuel surcharge" and a lease payment, further diluting the pay Plaintiff and similarly situated truck drivers received.

40. When dividing the total weekly pay, less the prohibited deductions, by the total weekly hours considered worked pursuant to the FLSA for the Plaintiff and putative collective action members, there are numerous workweeks in the time period of three years preceding the date this lawsuit was filed and forward that Plaintiff and the putative collective action members were not paid at least the FLSA minimum hourly wage rate by Defendant.

## V. CONTROLLING LEGAL RULES

41. The FLSA requires that an employer pay its employees at least the applicable minimum wage for all hours of work completed on behalf of the employer. 29 U.S.C. § 206.

42. As of the filing of this lawsuit, the federal minimum wage is $7.25 per hour, and it has been $7.25 at all times relevant to this lawsuit. 29 U.S.C. § 206(a).

43. Regulations to the FLSA require that, where an employee is required to be on duty for twenty-four (24) hours or more, all of those hours of work are compensable hours worked, absent a prior agreement of the employer and employee to the contrary. *See* 29 C.F.R. § 785.22(a).

44. In the event the employer and employee do agree to exclude bona fide sleeping periods, the employer may only credit eight hours of work time as sleeping time. *See id.*

45. Federal law requires employers to make and keep accurate and detailed payroll data for non-exempt employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. Amongst other things, the

regulations require employers to make and keep payroll records showing data such as the employee's name, social security number, occupation, time of day and day of week which the workweek begins, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total wages paid each pay period and date of payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R. § 516.2(a)-(b). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

46. The Motor Carrier Act Exemption applies only to an employee's eligibility for overtime wages, and not to their entitlement to minimum wages. *See* 29 U.S.C. § 213(b)(1) (exempting transportation workers from maximum hour requirements only). Consequently, employees subject to the Motor Carrier Act Exemption are entitled to minimum wages.

47. Transportation workers may not be subject to binding individual arbitration. *See* 9 U.S.C. § 1; *New Prime Inc. v. Olivera*, 139 S.Ct. 532, 539 (2019) (interpreting Federal Arbitration Act to find that district court did not have authority to compel interstate trucker's claim to arbitration).

## VI. CAUSE OF ACTION: FAILURE TO PAY MINIMUM WAGE FOR ALL HOURS OF WORK

48. At all times relevant to this lawsuit, Defendant has been and is an eligible and covered employer under the FLSA. *See* 29 U.S.C. § 203(d).

49. At all times relevant to this lawsuit, Defendant has been and is an enterprise engaged in commerce under the FLSA. *See* 29 U.S.C. § 203(s)(1)(A).

50. At all times relevant to this lawsuit, Defendant has employed and continues to employ two or more truck driver employees, including Plaintiff and the putative collective action members, who engaged in commerce or in the production of goods for commerce. *See* 29 U.S.C.

§§ 206-207.

51. At all relevant times, Defendant has had annual gross volume of sales or business done in excess of $500,000.

52. The FLSA applies/applied to Plaintiff and the putative collective action members at all times that they worked as truck driver employees for Defendant.

53. No exemption applies which would prohibit Plaintiff and the putative collective action members from receiving minimum wages for all hours worked for Defendant.

54. At all relevant times, Plaintiff and the putative collective action members were employees of Defendant within the meaning of the FLSA, paid by IRS Form W-2.

55. At all relevant times, Plaintiff and the putative collective action members were entitled to be paid at least the applicable minimum wage for all hours worked for Defendant.

56. Because Plaintiff and the putative collective action members worked for periods in excess of twenty-four (24) hours, they were entitled to be paid for all hours worked in those periods, unless there was a prior agreement that Defendant could subtract eight hours of sleep time from their workday.

57. On information and belief, no such agreement to subtract eight hours of sleep time per day existed between Plaintiff and Defendant or between the putative collective action members and Defendant.

58. Defendant's pay practice was to pay wages to Plaintiff and the putative collective action members on a per-load basis.

59. Defendant did not ensure that these wages met or exceeded the minimum wage when divided by all of the hours Plaintiff and the putative collective action members worked each workweek.

60. The wages received by Plaintiff and the putative collective action members from Defendant frequently fell short of the applicable minimum wage when divided by all hours considered worked by the FLSA each workweek.

61. Defendant's failure to ensure that the wages paid to Plaintiff met or exceeded the applicable minimum wage when divided by all of the hours Plaintiff and the putative collective action members were considered to have worked under the FLSA during each workweek was a violation of the FLSA.

62. Defendant's violation of the FLSA is/was willful within the meaning of 29 U.S.C. § 255(a).

63. At all material times, Defendant was aware that Plaintiff and the putative collective action members were not paid at least the applicable minimum wage for all hours worked per workweek.

64. Plaintiff and the putative collective action members specifically plead recovery for the time period of three years preceding the date this lawsuit was filed and forward for their FLSA claims as the result of Defendant's willful conduct. *See* 29 U.S.C. § 255(a).

### VII. COLLECTIVE ACTION CLAIMS

65. Where, as here, the employer's actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis.

66. Plaintiff seeks to bring their claims under the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and a collective preliminarily defined as:

> **All current and former truck driver employees of Defendant who were paid on a per-load basis operating out of any of Defendant's locations and did not receive the federally mandated minimum wage for all of their respective weekly hours of work.**

67. Plaintiff has personal knowledge that other putative collective action members were

paid pursuant to the same policy as he was, namely, paid on a per-load basis without regard to whether the wages paid satisfied the FLSA requirement that all hours worked be paid at the applicable minimum wage.

68. The putative collective action members are similarly situated to Plaintiff in all relevant respects, having performed the same work duties as Plaintiff and being similarly situated with regard to Defendant's pay methods and/or practices.

69. The putative collective action members are not exempt from receiving pay at the federally-mandated minimum wage rate under the FLSA.

70. Defendant's failure to pay minimum wages results from generally applicable policies or practices, and does not depend on the personal circumstances of the putative collective action members.

71. The specific job titles or precise job responsibilities of each putative collective action member do not prevent collective treatment.

72. Although the exact amount of damages may vary among the putative collective action members, their respective damages are easily calculable using a simple formula uniformly applicable to all of them.

73. The relevant time period for this collective action is three years preceding the date this lawsuit was filed and forward, or such other time period deemed appropriate by the Court.

74. Plaintiff reserves the right to establish sub-classes and/or modify class notice language as appropriate in any motion to certify a collective action or other proceeding.

75. Plaintiff further reserves the right to amend the definition of the putative class, or subclasses therein, if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

## VIII.  JURY DEMAND

76. Plaintiff demands a jury trial.

## IX.  DAMAGES AND PRAYER

77. Plaintiff asks that the Court issue a summons for Defendant to appear and answer, and that Plaintiff and the putative collective action members be awarded a judgment against Defendant or order(s) from the Court for the following:

   a. An order conditionally certifying this case as an FLSA collective action and requiring notice to be issued to all putative collective action members;

   b. All damages allowed by the FLSA, including back wages;

   c. Liquidated damages in an amount equal to FLSA-mandated back wages;

   d. Legal fees;

   e. Costs;

   f. Post-judgment interest;

   g. All other relief to which Plaintiff and the collective action members may be justly entitled.

Dated: June 23, 2020

Respectfully submitted,

SHELLIST | LAZARZ | SLOBIN LLP

By: */s/ Ricardo J. Prieto*
Melinda Arbuckle
State Bar No. 24080773
marbuckle@eeoc.net
Ricardo J. Prieto
State Bar No. 24062947
rprieto@eeoc.net
Shellist Lazarz Slobin LLP
11 Greenway Plaza, Suite 1515
Houston, TX 77046
(713) 621-2277 – Telephone
(713) 621-0993 – Facsimile

ATTORNEYS FOR PLAINTIFF AND PUTATIVE
COLLECTIVE ACTION MEMBERS